GERBER, J.
 

 The plaintiff appeals from a final summary judgment. The issue is whether the defendant can be liable for negligent en-trustment or negligent undertaking where the defendant took his alcohol-impaired brother’s car keys, and then put the keys in a place where his brother easily found the keys, resulting in his brother causing a fatal collision. We hold that, under those facts, the defendant cannot be liable for negligent entrustment or negligent undertaking. Therefore, we affirm.
 

 The material facts are undisputed. One night at 8:30 p.m., the defendant and his brother went to a restaurant. Over the next hour and forty-five minutes, the defendant’s brother drank several glasses of bourbon. At 10:15 p.m., the defendant and his brother left the restaurant. The defendant asked for his brother’s keys because he felt his brother had too much to drink. His brother handed over the keys. The defendant then drove himself and his brother to the defendant’s home. They arrived at 11:30 p.m. The defendant put the keys in the kitchen and went into his home office to do some work. His brother remained in the other part of the house.
 

 At 2:00 a.m., the defendant’s brother came into the office. The defendant recognized that his brother had been drinking more and was in worse shape than when they had left the restaurant. His brother had the keys and said he was going home. The defendant told his brother it would be best if he stayed the night. His brother agreed and again handed over the keys, saying that he would stay the night. The brother then went back to the other part of the house.
 

 At 2:10 a.m., the defendant went into the living room and put the keys on a hutch. The hutch was twenty feet from the couch on which his brother would be sleeping. The defendant did not keep the keys because he did not want his brother to wake him and his wife when leaving for work at 8:00 or 9:00 that morning. After the defendant put the keys on the hutch, his brother got ready to sleep on the couch. The defendant then went back to his office.
 

 
 *898
 
 At 2:30 a.m., the defendant went into the living room. He saw his brother lying on the couch with his eyes closed. The defendant then went to bed.
 

 At some time before 3:13 a.m., the defendant’s brother got up, took the keys, and left the house. He drove the wrong way down a nearby road and collided head-on with a vehicle driven by Suzanne Cantalupo. Both the defendant’s brother and Cantalupo were killed.
 

 The personal representative of Cantalu-po’s estate filed a two-count action against the defendant for negligent entrustment and negligent undertaking. The defendant moved for final summary judgment, arguing that he could not be liable under the undisputed facts of this case. After a hearing, the circuit court granted the motion, reasoning:
 

 Obviously, (the defendant) could have done more ... to secure the keys. But I’m going to grant the summary judgment, and the 4th can decide — I don’t know much about public policy, but I don’t think people in a position like this, where they’re going to be liable no matter what they do if what they do fails. I recognize the analogy to the Good Samaritan law.... So I’m going to grant the motion for summary judgment.
 

 This appeal followed. The plaintiff argues that the circuit court erred in granting the motion for summary judgment on public policy grounds without addressing the merits of the claims for negligent en-trustment and negligent undertaking. The plaintiff further argues that, on the merits, the court should have denied the motion for summary judgment because genuine issues of material fact exist as to whether the defendant is liable for negligent entrustment and negligent undertaking.
 
 See Moore v. Morris,
 
 475 So.2d 666, 668 (Fla.1985) (“A summary judgment should not be granted unless the facts are so crystallized that nothing remains but questions of law. If the evidence raises any issue of material fact ... it should be submitted to the jury.”).
 

 We agree with the plaintiff that the court should not have granted the motion for summary judgment on public policy grounds without addressing the merits of the claims. However, because the parties presented the court -with arguments on the merits of the claims, and because our review is de novo, we can address the merits of the claims.
 
 See Fina v. Hennarichs,
 
 19 So.3d 1081, 1084 (Fla. 4th DCA 2009) (“‘The standard of review applicable to trial court rulings on motions for summary judgment is
 
 de novo.’”)
 
 (citation omitted);
 
 Dade County Sch. Bd. v. Radio Station WQBA,
 
 731 So.2d 638, 644 (Fla.1999) (“[I]f a trial court reaches the right result, but for the wrong reasons, it will be upheld if there is any basis which would support the judgment in the record.”).
 

 Having reviewed the merits of the claims, we find that the circuit court properly granted the motion for summary judgment. Without genuine issue of material fact, the defendant cannot be liable for negligent entrustment or negligent undertaking under the circumstances of this case. We address each cause of action in turn.
 

 Negligent Entrustment
 

 This court has recognized Section 390 of the Restatement (Second) of Torts as setting forth the law of negligent entrustment.
 
 Fina,
 
 19 So.3d at 1085. Section 390 states:
 

 One who supplies directly or through a third person a chattel for the use of another whom the supplier knows or has reason to know to be likely because of his youth, inexperience, or otherwise, to use it in a manner involving unreasonable risk of physical harm to himself and
 
 *899
 
 others whom the supplier should expect to share in or be endangered by its use, is subject to liability for physical harm resulting to them.
 

 Restatement (Second) of Torts § 390 (1965). Here, the plaintiff argues that the defendant, by putting the car keys where his brother easily could find them, constructively entrusted the car to his brother when he knew that his brother was likely to use the car in a manner involving unreasonable risk of harm to himself and others.
 

 In support of this constructive entrustment theory, the plaintiff relies on
 
 Foster v. Arthur,
 
 519 So.2d 1092 (Fla. 1st DCA 1988). In
 
 Foster,
 
 the defendant asked her housemate, a convicted murderer, to repair her bed frame. In doing so, the housemate discovered a gun which the defendant kept between the mattress and the box spring. The housemate later used the gun to shoot the plaintiff. The plaintiff sued the defendant for negligently entrusting the gun to the housemate. After the trial court entered a final judgment for the plaintiff, the first district affirmed. In its reasoning, the first district recognized that the defendant did not personally deliver the gun to her housemate. However, the first district found that the defendant placed the gun in her housemate’s “constructive, if not actual, possession” by inviting the housemate to repair the bed frame.
 
 Id.
 
 at 1094. The court stated:
 

 Consent to use a firearm need not be expressly given.... It may be given indirectly through the conduct of the gun owner, such as when, under certain circumstances, he provides the opportunity for another person to use the gun.
 

 Id.
 

 We find the plaintiffs reliance on
 
 Foster
 
 to be misplaced and therefore reject the plaintiffs argument. The defendant’s mere placement of the car keys on the hutch where his brother easily could find them does not constitute “supplying” the keys, much less the car, to his brother. To the extent the first district found in
 
 Foster
 
 that such an action may be considered to be a “constructive” entrustment, we question whether such a finding should be recognized to exist as a matter of law. In any event, to avoid conflict with our sister court, we read
 
 Foster
 
 to be limited to the unique facts of that case, that is, the use of a firearm.
 

 Negligent Undertaking
 

 Our supreme court set forth the law of negligent undertaking in
 
 Clay Electric Cooperative, Inc. v. Johnson,
 
 873 So.2d 1182 (Fla.2003):
 

 Whenever one undertakes to provide a service to others, whether one does so gratuitously or by contract, the individual who undertakes to provide the service — i.e., the “undertaker” — thereby assumes a duty to act carefully and to not put others at an undue risk of harm. This maxim, termed the “undertaker’s doctrine,” applies ... not just to parties in privity with one another — i.e., the parties directly involved in an agreement or undertaking — but also to third parties....
 

 Section 324A of the Restatement sets forth the following standard for assessing liability in such cases:
 

 One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
 

 (a) his failure to exercise reasonable care increases the risk of such harm, or
 

 
 *900
 
 (b) he has undertaken to perform a duty owed by the other to the third person, or
 

 (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.
 

 Id.
 
 at 1186 (quoting Restatement (Second) of Torts § 324A (1965)). Here, the plaintiff argues that a genuine issue of material fact exists as to whether the defendant’s conduct satisfied the first and second prongs of section 324A. We disagree.
 

 As to section 324A’s first prong, we find that no genuine issue of material fact exists because, even if the defendant failed to exercise reasonable care by putting the keys on the hutch where his brother easily could find them, that failure did not increase the risk of harm. From the time the defendant and his brother left the restaurant, the risk of harm was that the defendant’s brother would drive under the influence and injure a third person other than himself. When the defendant twice convinced his brother to hand over the keys, the defendant reduced that risk of harm. When the defendant put the keys on the hutch where his brother easily could find them, the defendant merely restored the risk of harm to the level which existed when he and his brother left the restaurant. At no time during the night did the defendant increase the risk of harm above that level.
 

 As to section 324A’s second prong, we recognize that the defendant’s brother owed a duty to third persons not to drive under the influence. However, the record establishes, without genuine issue of material fact, that the defendant did not undertake to perform that duty. Rather, the defendant attempted to prevent his brother from driving under the influence. “Not driving under the influence” is different in both words and substance from “attempting to prevent another from driving under the influence.” Not driving under the influence is inaction. One cannot undertake to “perform” another’s duty of inaction.
 

 The plaintiff argues that this case is indistinguishable from
 
 Clay Electric.
 
 There, an electric company contractually agreed to maintain streetlights along a
 
 road but
 
 then failed to maintain the streetlights, resulting in a driver killing a boy who was walking to his school bus stop along the darkened road. Our supreme court found that the electric company assumed a specific duty to act with due care in maintaining the streetlights and that the electric company could be liable under section 324A’s first and third prongs. According to the court: (1) the electric company’s failure to exercise due care in maintaining the streetlights increased the risk that a driver would be unable to see the victim; and (2) the electric company, in undertaking to maintain the streetlights, arguably caused the victim’s family to rely on the fact that the lights would be operating properly and that the victim’s pathway to the school bus stop would be lighted. The court rejected the electric company’s contention that the “increased risk” subsection was inapplicable because the victim was no worse off with an inoperative streetlight than he would have been with no light at all. The court reasoned:
 

 The plaintiffs did not allege that [the electric company] negligently
 
 installed
 
 the streetlights on an otherwise
 
 unlighted
 
 street. Rather, they alleged that [the electric company] negligently
 
 maintained
 
 the streetlights on an otherwise
 
 lighted
 
 street.... This raises a jury question as to whether [the electric company’s] negligence increased the risk of harm to [the victim],
 

 873 So.2d at 1187 (emphasis in original).
 

 Unlike the electric company, the defendant here did not have
 
 any
 
 duty to prevent his brother from driving under the influence.
 
 See Carney v. Gambel,
 
 751 So.2d
 
 *901
 
 653, 654 (Fla. 4th DCA 1999) (“Generally, there is no duty to control the conduct of a third person to prevent him or her from causing physical harm to another.”). The fact that the defendant undertook to prevent his brother from driving under the influence at various times did not impose upon the defendant a duty to prevent his brother from driving under the influence at
 
 all
 
 times. To hold otherwise would discourage people from taking an impaired person’s keys in the first instance, just as the circuit court articulated purely from a public policy standpoint. Our holding today avoids that nonsensical result.
 

 At oral argument, the plaintiff suggested in the alternative that the time from which the alleged increased risk of harm could be measured was the time at which the defendant and his brother arrived at the defendant’s home and the brother obtained more to drink. We disagree. To the extent the defendant’s brother drank more at the defendant’s home, the defendant was a “social host” during that time. Our supreme court has found that a person injured by an impaired person does not have a cause of action against a social host who served alcoholic beverages to the impaired person.
 
 Bankston v. Brennan,
 
 507 So.2d 1385, 1387 (Fla.1987);
 
 see also Dowell v. Gracewood Fruit Co.,
 
 559 So.2d 217, 218 (Fla.1990) (rejecting attempt to characterize
 
 Bankston
 
 as only deciding liability for serving alcoholic beverages to a minor). Thus, measuring the risk of harm from the time when the defendant and his brother arrived at the defendant’s home does not create liability here.
 

 Affirmed.
 

 HAZOURI, J., and KELLEY, GLENN D., Associate Judge, concur.