IN THE DISTRICT COURT OF APPEAL
FIRST DISTRICT, STATE OF FLORIDA

STATE OF FLORIDA,

      Appellant,

v.

SAMUEL DEPRIEST,

      Appellee.

_____/

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

CASE NO. 1D15-1822

Opinion filed December 4, 2015.

An appeal from the Circuit Court for Walton County.
Kelvin C. Wells, Judge.

Pamela Jo Bondi, Attorney General, Matthew Pavese, Assistant Attorney General,
Tallahassee, for Appellant.

Nancy A. Daniels, Public Defender, Steven L. Seliger, Assistant Public Defender,
Tallahassee, for Appellee.

THOMAS, J.

Samuel Depriest was charged by information with vehicular homicide.
Depriest moved to dismiss the charges pursuant to Florida Rule of Criminal
Procedure 3.190(c)(4) (2014), asserting that his actions did not rise to the level of
recklessness required to prove the offense of vehicular homicide. The State filed a

traverse, and the matter proceeded to a hearing. After the hearing, the trial court granted Depriest's motion, concluding that the undisputed facts did not establish that Depriest's actions rose to the level of willful and wanton driving, and granted the motion to dismiss. We disagree. We conclude that the undisputed facts established a prima facie case of vehicular homicide as a matter of law and reverse.

As previously noted by this court in Bonge v. State, 53 So. 3d 1231, 1233 (Fla. 1st DCA 2011):

> The purpose of a motion to dismiss an information pursuant to rule 3.190(c)(4) is to 'ascertain whether the undisputed facts which the State will rely on to prove its case, establish a prima facie case, as a matter of law, so as to permit a jury to determine the defendant guilty of the crime charged.' Lowe v. State, 40 So.3d 789, 791 (Fla. 5th DCA 2010), *quoting* State v. Walthour, 876 So.2d 594, 595 (Fla. 5th DCA 2004). Because this appeal raises a question of law, the standard of review is *de novo*. State v. Sholl, 18 So.3d 1158, 1160 (Fla. 1st DCA 2009).

Here the undisputed facts reflect that at approximately one a.m. on November 28, 2013, the Florida Highway Patrol was notified of a crash on U.S. Highway 331, a two-lane undivided highway. The posted speed limit was 55 mph, and the area was rural with limited traffic and no artificial lighting. Depriest was driving south and came upon a slower-moving van and proceeded to pass in a legal passing area. A witness, travelling southbound behind Depriest, also passed the van. The witness estimated that they were both travelling around the speed limit of 55 mph, and increased to around 60 mph while passing.

2

After passing the slower-moving van, the witness returned to the southbound lane but Depriest remained in the northbound lane, travelling in the wrong lane for approximately one-half mile until the head-on collision with the victim's car, killing the driver. The witness saw the victim's headlights and stated that Depriest took no evasive action. The investigator determined that both vehicles were travelling at approximately 55 mph at the time of the collision.

In Depriest's recorded statement to the police, he asserted that he did not see the victim's vehicle or headlights. He acknowledged he travelled in the opposite lane to avoid having to pass any potential slower-moving vehicles, none of which were observed by the witness. In other words, Appellant drove the wrong way for one-half mile for his convenience should he need to pass another car. This statement was excluded by motion in limine before the hearing on the motion to dismiss, but the court then agreed, for purposes of the motion to dismiss, to consider the statement.

Section 782.071, Florida Statutes (2014), outlines "vehicular homicide" as "the killing of a human being … caused by the operation of a motor vehicle by another in a reckless manner likely to cause the death of, or great bodily harm to, another." In Cahours v. State, 147 So. 3d 574, 577 (Fla. 1st DCA 2014), this court recently discussed the burden of proof for vehicular homicide, holding:

> In determining the State's burden of proof for a vehicular homicide conviction, this court has reasoned that because "the offense of

vehicular homicide has been described by the supreme court as involving a degree of negligence *more* than a mere failure to use ordinary care, the state must necessarily adduce evidence showing conduct at least sufficient to constitute reckless driving as ... involving a '**willful** or wanton disregard for the safety of persons or property....'" W.E.B. v. State, 553 So.2d 323, 326 (Fla. 1st DCA 1989) (quoting § 316.192, Fla. Stat.).

(Italicized emphasis in original; bolded emphasis added.)

The standard jury instruction on reckless driving provides the following definitions for "willful" and "wanton":

"Willful" means intentionally, knowingly and purposely.
"Wanton" means with a conscious and intentional indifference to consequences and with knowledge that damage is likely to be done to persons or property.

Fla. Std. Jury Instr. (Crim.) 28.5 (2014).

This court in W.E.B. outlined these definitions of "willful" and "wanton" and further held:

[A]lthough a defendant need not have foreseen the specific circumstances causing the death of the particular victim, it is sufficient that he or she should have reasonably foreseen that the same general type of harm might occur if he or she knowingly drives the vehicle under circumstances that would likely cause the death of another.

553 So. 2d at 326.

We have considered the case law cited by both Depriest and the State to support their respective positions. See e.g. Miller v. State, 75 So. 2d 312 (Fla. 1954); Sexton v. State, 898 So. 2d 1187 (Fla. 1st DCA 2005). We find that the

4

undisputed facts of this case are not like the cases cited by Depriest. Depriest was not briefly distracted. He made a calculated and willful decision to travel in the wrong lane for one-half mile at a speed which was very likely to kill or seriously maim in the event of a head-on collision, which occurred. A jury could lawfully and reasonably decide that willfully and unnecessarily driving 55 mph for a half-mile in the wrong lane of traffic, when fully capable of returning to the correct lane, was a willful and wanton disregard for the safety of others. To affirm the trial court's order would be equivalent to holding that a driver who travels in the wrong lane of traffic until he kills another driver in a head-on collision is mere negligence. We decline to so hold.

Accordingly, we REVERSE the order of dismissal and REMAND for reinstatement of the charge of vehicular homicide.

WOLF, J., CONCURS; KELSEY, J., DISSENTS WITHOUT OPINION.

5