# Third District Court of Appeal

## State of Florida

Opinion filed May 4, 2016.
Not final until disposition of timely filed motion for rehearing.

_____

Nos. 3D15-1610, 3D15-1608, 3D15-1180 & 3D15-1179
Lower Tribunal No. 12-116-K

_____


**Joel J. Richard and Kim C. Chernecky,**
Appellants,

vs.

**Karen J. Richard,**
Appellee.


Appeals from the Circuit Court for Monroe County, Timothy J. Koenig, Judge.

Cummings & Lockwood and Christopher L. Ulrich (Naples); Raul R. Lopez, for appellants.

Horan, Wallace & Higgins and Cara Higgins (Key West); Kelley & Kelley, P.L. and Sean W. Kelley (St. Augustine), for appellee.


Before EMAS, LOGUE and SCALES, JJ.

EMAS, J.

**INTRODUCTION**

Joel Richard ("Joel"), in his capacity as co-personal representative of the Estate of Edward A. Richard ("the Estate"), and Kim Chernecky ("Kim") appeal from lower court orders that: 1) entered summary judgment in favor of Karen Richard ("Karen") and declared a notice to creditors a nullity because it was published one day prior to rendition of the order appointing personal representatives; and (2) denied Joel and Kim's motions to strike Karen's creditor claim as untimely and declared Karen's creditor claim timely filed.[1]  We reverse the orders on appeal, holding that the relation back provision of section 733.601, Florida Statutes (2012), applies to the personal representatives' act of publishing the notice to creditors.  Therefore, even though the personal representatives published the notice one day before the court entered its order appointing them as personal representatives, the order relates back to this prior act and renders the act valid.

**FACTS**

Edward A. Richard ("the Decedent") passed away on May 9, 2012.  On June 6, 2012, his surviving spouse (Karen) and his son (Joel) filed a petition for testate

---

[1] The summary judgment order was appealed separately by Kim (Case No. 3D15-1179) and Joel (Case No. 3D15-1180).  The order denying the motions to strike and granting the motion to declare Karen's claim timely was also separately appealed by Joel (Case No. 3D15-1608) and Kim (Case No. 3D15-1610).  This court consolidated all four appeals.

administration. Both Karen and Joel, who at the time were represented by the same attorney, sought to be appointed co-personal representatives of the estate. The court entered an order admitting the will and a codicil to probate and appointing Karen and Joel co-personal representatives on June 14, 2012. The letters of administration were also signed on June 14. Both Karen and Joel had previously signed the oath of personal representative on May 21, 2012.

On June 13, 2012, one day prior to the court's order appointing Karen and Joel as co-personal representatives, Karen and Joel signed and published the first notice to creditors. Both signed the notice as "personal representative." The second statutorily-required notice to creditors was published on June 20, 2012.

Thereafter, on September 21, 2012 (more than three months after the first notice to creditors was published), Karen filed a statement of claim[2], asserting that pursuant to a prenuptial agreement between herself and the Decedent, she was entitled to nearly $4 million in retirement benefits. She also filed a petition for declaration that her claim was timely, or in the alternative, to extend the time to file her claim based on estoppel or insufficient notice. Karen claimed that "the estate became aware that [Karen] may have a potential claim against the estate, and therefore, became obligated" to serve her with notice, but failed to do so.

---

[2] Karen had obtained separate counsel at this point to file her notice and petition.

3

Kim, one of the Decedent's children, objected to Karen's claim and noted that Karen's claim was barred because it was not timely filed. Kim also filed a motion to strike Karen's claim as untimely, and asserted that Karen was not a reasonably ascertainable creditor and, alternatively, that Karen was estopped from claiming a lack of written notice because she was one of the co-personal representatives and was a signatory to the notice to creditors.

Joel also moved to strike Karen's statement of claim, objected to the claim, and opposed her petition to have the claim declared timely or to extend time for filing. He asserted the statement of claim was time-barred and not served in compliance with Florida Probate Rules. Further, Joel asserted that Karen failed to establish she was entitled to an extension of time based on fraud, estoppel or insufficient notice.

Karen later filed an amended petition for a declaration that her claim was timely filed or, in the alternative, to extend the time to file her claim. She asserted she was a reasonably ascertainable creditor; that Joel and counsel knew about her claim but failed to serve her with the notice to creditors; that the Estate would not be prejudiced by her claim; and that "equity and fairness" weigh in favor of her claim because she is the former spouse of the Decedent. Finally, Karen argued that the notice to creditors was null and void because it was not published by a duly appointed personal representative as required by Florida law, due to the fact that

4

she and Joel were not appointed until the day after the notice was published. She argued that the relation back doctrine did not apply because the statute in question—section 733.601, Florida Statutes (2012)—expressly provides only that a personal representative's "powers" relate back, but does not provide for the relation back of a personal representative's "duties." Karen contends that, because the publication of notice to creditors is a duty and not a power, the June 14 order appointing personal representatives did not relate back to the premature notice to creditors signed and published on June 13.

Karen filed a motion for summary judgment on the issues of whether the notice to creditors was null and void, whether her statement of claim was barred, whether the relation back doctrine applied, and whether she was a reasonably ascertainable creditor such that she should have been served with a notice to creditors. At a hearing on the motion, the trial court granted summary judgment, concluding that the notice to creditors published on June 13 was a nullity because it was published one day prior to the court's order appointing the co-personal representatives and that the relation back doctrine did not apply to validate the act of publication.

The court held a subsequent hearing on Joel and Kim's motions to strike Karen's claim and on Karen's amended motion to declare her claim timely filed. The court denied Joel and Kim's motions to strike and granted Karen's motion,

5

determining that neither the first nor the second notice to creditors was valid, and declared Karen's claim timely filed. These appeals followed. We have jurisdiction pursuant to Florida Rule of Appellate Procedure 9.170(b), and review the issues raised de novo. Univ. of Miami v. Wilson, 948 So. 2d 774 (Fla. 3d DCA 2006).

## ANALYSIS

The question presented in this case: does the relation back doctrine, as incorporated in section 733.601, apply to validate a notice to creditors that was published one day prior to the appointment of the personal representatives or did the trial court correctly determine that the premature notice is a nullity, and therefore, that Karen's statement of claim was timely?

It is undisputed that:

● the notice to creditors was first published on June 13;

● Joel and Karen were appointed as co-personal representatives on June 14;

● a second notice to creditors was published on June 20; and

● Karen filed her statement of claim on September 21, 2012, more than three months after the first publication date.[3]

---

[3] Under section 733.702(1), Florida Statutes (2015) "no claim or demand against the decedent's estate that arose before the death of the decedent . . . is binding on the estate . . . unless filed in the probate proceeding on or before the later of the date that is 3 months after the time of the first publication of the notice to creditors, or as to any creditor required to be served with a copy of the notice to creditors, 30 days after the date of service on the creditor . . . ."

6

The roots of the "relation back" doctrine run deep in Florida law. In 1954, the Florida Supreme Court referred to it as an "ancient doctrine" when considering whether or not a trial court erred in dismissing a wrongful death claim brought by a father on behalf of his deceased son's estate prior to his appointment as personal representative of the estate. Griffin v. Workman, 73 So. 2d 844, 846 (Fla. 1954). The Court further noted the doctrine, which provides that "whenever letters of administration or testamentary are granted they relate back to the intestate's or testator's death," had "been accepted with virtual unanimity, since it was promulgated, in a long line of cases" throughout the country. Id. Determining that the relation back doctrine should apply in the circumstances before it, the Griffin Court approved a decision from Ohio which held that the "institution of suit 'was not a void performance, being an act done during the interim which was for the benefit of the estate.'" Id. (quoting Archdeacon v. Cincinnati Gas & Elec. Co., 81 N.E. 152, 154 (Ohio 1907)).

In 1974, the Legislature codified the relation back doctrine in section 733.601, Florida Statutes. The 2012 version of that statute provides in pertinent part:

> The duties and powers of a personal representative commence upon appointment. The powers of a personal representative relate back in time to give acts by the person appointed, occurring before appointment and beneficial to the estate, the same effect as those occurring

7

after appointment. A personal representative may ratify and accept acts on behalf of the estate done by others when the acts would have been proper for a personal representative.

§733.601, Fla. Stat. (2012).

The Florida Supreme Court has recently recognized the continued vitality of the doctrine, see Berges v. Infinity Ins. Co., 896 So. 2d 665 (Fla. 2004), as has this court. See Wilson, 948 So. 2d at 774 (applying relation back doctrine to validate pre-suit notice served by personal representatives prior to their appointment). See also Talan v. Murphy, 443 So. 2d 207 (Fla. 1984).

The question is whether Joel and Karen's June 13 act of publishing the notice to creditors was validated upon entry of the court's June 14 order appointing them as personal representatives. Karen contends that the relation back doctrine (and section 733.601) does not apply because the statutory language makes a distinction between a "power" and a "duty." Specifically, it provides:

> The duties and powers of a personal representative commence upon appointment. The powers of a personal representative relate back in time to give acts by the person appointed, occurring before appointment and beneficial to the estate, the same effect as those occurring after appointment.
>
> § 733.601, Fla. Stat. (2012) (emphasis added).

Karen asserts that by including the words "duties and powers" in the first sentence, but omitting the word "duties" from the second sentence, the Legislature

8

intended that only the **powers**, and not the **duties**, of a personal representative relate back. Karen further argues that because publication of the notice to the creditors is a "duty" rather than a "power," the June 14 order appointing Joel and Karen as personal representatives does not relate back to the publication of the notice to creditors the day before, and therefore, that the publication is a nullity.[4] We are not persuaded by this argument.

Although the statute provides that the "powers . . . relate back in time," the same sentence goes on to clarify that they relate back "to give **acts** by the person appointed, occurring before appointment and beneficial to the estate, the same effect as those occurring after appointment." § 733.601 (emphasis added). Therefore, it is the **acts** of the person, who is later appointed personal representative of the estate, taken before his or her actual appointment that are granted "the same effect as those occurring after appointment," so long as those acts are beneficial to the estate. Id. Certainly one cannot have the duty to act unless one also has the power to act. Taking the instant case as an example:

implicit in the nature of the duty to publish a notice to creditors is the existence of

___

[4] As the argument goes, because the first publication was null and void, the "second" notice of publication (published on June 20), though a valid act, was in effect only the "first" notice of publication and, given the failure to publish a second valid notice to creditors as required by statute, the personal representatives failed to comply with the statutory requirements for publication of notice to creditors. See § 766.2121(2), Fla. Stat. (2012) (requiring that, to be valid, the notice to creditors must be published "once a week for 2 consecutive weeks, in a newspaper published in the county where the estate is administered").

the power to publish the notice to creditors. Therefore, there must have been some other reason why the Legislature chose to include the word "duties" in the first sentence of section 733.601, while omitting it from the very next sentence. It seems clear that the Legislature did so to avoid imposing a statutory duty upon a person, to act on behalf of the estate, prior to the court appointing that person as personal representative. The decision in Gilson v. Foltz, 431 So. 2d 647 (Fla. 2d DCA 1983), provides a good example of the unintended consequences that could follow had the term "duties" been included in the second sentence of section 733.601. In Gilson, the Second District rejected a claim for negligence against the son of a decedent, sued in his capacity as a personal representative, for failing to review a decedent's will prior to the decedent's death. The Second District held that the decedent's son had no duty to examine the decedent's will prior to his death, because the son had not yet been appointed personal representative. The personal representative could not have a "duty" to act prior to the decedent's death (or, by extension, prior to his appointment as personal representative). Had the statutory language of section 733.601 provided that the "powers and duties of a personal representative relate back in time" (emphasized words added), a personal representative could arguably be held responsible for "failing" to discharge a duty even before she was appointed personal representative and before she assumed her statutory duties. Such a construction runs counter to the unquestionably proper

10

decision in <u>Gilson</u>, and we conclude that the language used in section 733.601, and the difference between the first two sentences of that statute, merely underscores this rational distinction.

We further note that the pertinent language of section 733.601 is identical in all material respects to that of the Uniform Probate Code. <u>See</u> Unif. Probate Code § 3-701 (amended 2010).[5]  Importantly, the comment to that Uniform Probate Code provision notes that "[t]his section codifies the doctrine that the **<u>authority</u>** of a personal representative relates back to death from the moment it arises." <u>Id.</u> (Emphasis added). This reinforces our conclusion that the relation back doctrine applies to "acts" taken by a personal representative prior to his or her appointment and is not limited to those acts which can be characterized as "powers," to the exclusion of those acts which can be characterized as "duties." <u>See</u> <u>Griffin</u>, 73 So. 2d at 846 (noting that "[a] wide variety of acts and conduct by a party acting in behalf of an estate when he was not properly qualified have been held to be

---

[5] That provision reads in pertinent part:

> <u>The duties and powers of a personal representative commence upon his appointment. The powers of a personal representative relate back in time to give acts by the person appointed which are beneficial to the estate occurring prior to appointment the same effect as those occurring thereafter.</u> Prior to appointment, a person named executor in a will may carry out written instructions of the decedent relating to his body, funeral and burial arrangements. A personal representative may ratify and accept acts on behalf of the estate done by others where the acts would have been proper for a personal representative.
> (Emphasis added.)

11

validated or ratified by his subsequent qualification as administrator . . . [including] advancement to a distributee; . . . the sale of estate property; the execution of a deed").

The relation back doctrine enjoys virtually unanimous application throughout the fifty states, and dates back, by some accounts, more than 500 years. See generally, Relation back of letters testamentary or of administration, 26 A.L.R. 1359 (1923). In addition, the publication of the notice to creditors can reasonably be described as both a duty **and** a power of the personal representative. The personal representative is the only person authorized to publish a valid notice to creditors[6] and the personal representative is obligated to publish the notice promptly. See § 733.2121(1), Fla. Stat. (2012). Thus, to the extent Karen's proposed construction of section 733.601 is plausible, the "act" of publishing a notice to creditors, prior to the order appointing personal representatives, was validated by the relation back doctrine.

---

[6] The only other person who is authorized to publish the notice to creditors under Florida law is a court-appointed curator, an individual "appointed by the court to take charge of the estate of a decedent until letters are issued." § 731.201, Fla. Stat. (2012); In re Sale's Estate, 227 So. 2d 199 (Fla. 1969) (noting a "curator is ordinarily appointed only as a temporary expedient to take possession of and preserve the assets of the estate until a personal representative may be appointed.") Under Florida Probate Rule 5.122(d), entitled "**Powers**," "the court may authorize the curator to perform any duty or function of a personal representative, including publication and service of notice to creditors."

Karen cites no case in support of the nice distinction she proposes between "duties" and "powers" of the personal representative as it relates to publishing the notice to creditors. The cases that Karen does cite in support of her position are inapposite. In <u>Tyler v. Huggins</u>, 175 So. 2d 239 (Fla. 2d DCA 1965), for example, the court was governed by now-repealed law, section 733.15, Florida Statutes (1973), which provided that "[e]very personal representative, **after** taking out letters testamentary or of administration, shall cause a notice to be published. . ." (emphasis added). In 1974, section 733.15 was repealed and section 733.601 (the relation back doctrine) was added to Florida probate law. The cases of <u>In re Sale's Estate</u>, 227 So. 2d 199 (Fla. 1969) and <u>Estate of Tanner</u>, 288 So. 2d 578 (Fla. 2d DCA 1974), are similarly inapplicable. First, both cases involve the authority of a curator, rather than a personal representative, to perform the duties of a personal representative without court approval. At the time those decisions were issued, curators were only authorized to perform the duties and functions of a personal representative "on special order of the court." § 733.501(3), Fla. Stat. (1974). That language no longer appears in the law. See § 733.501(1), Fla. Stat. (2012). To that extent, neither case is any longer persuasive precedent. Second, and more importantly, neither <u>Sale's</u> nor <u>Tanner</u> dealt at all with the application of the relation back doctrine.

In sum, none of the cases cited by Karen in support of her position dealt with the question presented here: whether the relation back doctrine applies to validate the act of publishing a notice to creditors undertaken by a personal representative one day before his appointment. We hold that it does, and further hold that the trial court erred in granting Karen's summary judgment motion and her motion to declare her claim timely filed, and in denying Joel and Kim's motions to strike Karen's claims.

Were we to adopt Karen's construction of the statute, it would create significant and substantial uncertainty for a personal representative, who would now be required in each instance to determine whether the act undertaken is considered to have been taken pursuant to a "duty" or a "power" such that the former would not relate back but the latter would.[7] This would be in conflict with the duties of a personal representative to "settle and distribute the estate of the decedent . . . as expeditiously and efficiently as is consistent with the best interests of the estate," § 733.602(1), and to "promptly publish a notice to creditors." § 733.2121.

**CONCLUSION**

---

[7] By way of example, section 733.604 imposes a duty upon a personal representative to "file a verified inventory of property of the estate." Under Karen's dichotomous construction, if the personal representative, prior to appointment, files the verified inventory, the subsequent order of appointment would not relate back and validate that act because it is considered a "duty" rather than a "power."

We hold that the relation back doctrine, codified in section 733.601, applies to the personal representative's act of publishing the notice to the creditors, and that the order appointing personal representative relates back and validates the pre-appointment act of publication of the notice to creditors. We reverse the orders on appeal and remand this cause to the trial court for further proceedings with this opinion.[8]

---

[8] Upon remand, the trial court should reconsider Karen's motion for summary judgment and her petition for declaration of timely filed claim to determine whether or not she was a reasonably ascertainable or known creditor, and whether she was entitled to be served with the notice to creditors (even though she herself signed the notice to creditors). We express no opinion on the merits of these issues.