IN THE DISTRICT COURT OF APPEAL
FIRST DISTRICT, STATE OF FLORIDA

SAMUEL M. DEPRIEST and
DOROTHY DEPRIEST,

      Appellants,

v.

RICHARD GREESON, as
Personal Representative of the
ESTATE OF CHRISTIAN W.
SCHNITZSPAHN,

      Appellee.

_____/

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

CASE NO. 1D16-0807

Opinion filed February 21, 2017.

An appeal from the Circuit Court for Walton County.
Thomas R. Santurri, Judge.

Erin Pogue Newell and Roy D. Wasson of Wasson & Associates, Chartered, Miami; Henry Lawrence Perry and H. Les McFatter of Perry & Young, P.A, Panama City, for Appellants.

Michael W. Kehoe of Quintairos, Prieto, Wood & Boyer, P.A., Pensacola, for Appellee.

KELSEY, J.

In the gap between a decedent's death and the appointment of a personal representative, does Florida's dangerous instrumentality doctrine make the estate vicariously liable for damages that the decedent's child allegedly caused while

driving the decedent's car? On the specific facts presented here, which are undisputed, the trial court concluded that the estate is not liable, and granted summary judgment in favor of the personal representative. On these facts, but on reasoning different from that articulated in the final judgment, we affirm.

## Use of Decedent's Car

Decedent and his wife lived with Decedent's adult daughter in Milton, Florida. His car and its keys were kept at his daughter's house, and she occasionally drove his car with his permission. There is no evidence that Decedent ever gave his daughter permission to continue to use the car in the event of his death. Decedent's will made no specific bequest of the car, and named his daughter and stepson as equal co-beneficiaries under the residuary clause. About a month after he died, his daughter was driving his car and came upon the scene of a recent accident in which Appellants, Samuel Depriest and his grandmother, were in a car that had collided head-on with an oncoming vehicle, killing the other driver.[*] Decedent's daughter collided with Mr. Depriest's disabled car, allegedly causing damages to Appellants in addition to what they suffered in the original collision.

---

[*] Mr. Depriest was charged with vehicular homicide as a result of the head-on collision that occurred when he was driving the wrong way in the oncoming lane after midnight. The charges were dismissed for lack of the requisite recklessness, but reinstated on appeal. *State v. Depriest*, 180 So. 3d 1099 (Fla. 1st DCA 2015). He was later tried and acquitted.

Appellants initially sued Decedent as owner of the car, before realizing he had died. They amended their complaint, suing Decedent's estate in addition to Decedent's daughter (later dropping her from the case). They alleged the estate was vicariously liable for damages caused by the daughter's use of Decedent's car because the estate had legal title to the car. They also alleged that the personal representative had prior knowledge of the daughter's use of the car and implied control over the car, and had impliedly consented to the daughter's use of the car by failing to take any affirmative action to prevent her from using it. Although the complaints did not articulate a specific species of vicarious liability, ultimately Appellants relied on the dangerous instrumentality doctrine, which they argue on appeal.

The personal representative nominated in Decedent's will was Decedent's stepson, who lived in South Carolina. Through discovery, the evidence established that when the stepson was in Florida for Decedent's funeral, he took the car title to a local Florida probate attorney along with other papers needed to open a probate case. He did not take possession of the car or its keys. There is no evidence that there was any communication between Decedent's stepson and Decedent's daughter about her use of Decedent's car, nor any evidence that the stepson knew the daughter intended to use Decedent's car or knew that she did use it. Directly to the contrary, he testified that he did not instruct her not to use the car, because he

3

did not know she had ever used it and would not have thought Decedent would have ever given her permission to use it. He knew she had her own car and assumed she would not drive Decedent's car. Therefore he did not think he had any reason to take the keys or the car itself, or to prohibit her from using the car. Appellants did not adduce any evidence disputing these facts.

Decedent's daughter called the stepson and reported the accident the day after it occurred. A probate case for Decedent's estate was filed four days after the accident, and letters of administration issued twenty days after the accident, appointing Decedent's stepson as the personal representative. The car was insured, and the insurer totaled it, paying the proceeds of the policy into the estate, where the money was later listed as an asset.

## Summary Judgment Standards

A trial court's order granting summary judgment is reviewed de novo. *Cantalupo v. Lewis*, 47 So. 3d 896, 898 (Fla. 4th DCA 2010) (applying de novo review to affirm summary judgment for defendant in negligent entrustment case); *Ruano v. Water Sports of Am., Inc.*, 578 So. 2d 385, 386 (Fla. 3d DCA 1991) (affirming summary judgment where there was no negligent entrustment as a matter of law). In this case the material facts are undisputed, leaving only their legal effect in question, which we review de novo. *Cantalupo*, 47 So. 3d at 898.

## Ownership of the Car

Before the trial court and again on appeal, the parties have disputed whether the estate owned Decedent's car after he died. The trial court concluded that the estate was not the title holder or otherwise the owner when the accident occurred. Although we agree with the trial court's ultimate disposition of the case, we do not agree that the estate had no legal ownership interest in Decedent's car. When Decedent died, "in the twinkling of a legal eye," the car became an asset of his estate. *Sharps v. Sharps*, 214 So. 2d 492, 495 (Fla. 3d DCA 1968) (holding that an uncashed check payable to the decedent became an asset of his estate the instant he died, and his widow would have to prove that it was a gift to her individually in order to obtain the proceeds for herself). *See also Mills v. Hamilton*, 163 So. 857, 858 (Fla. 1935) ("It is well settled that at the death of the owner of any personal property the title thereto vests in his personal representative and during the administration the personal representative is entitled to the possession of the same.").

Although Decedent's car was an asset of the estate, it did not belong to anyone individually. Decedent's will did not bequeath the car to anyone, and his daughter and stepson were co-equal beneficiaries under the residuary clause of the will. Therefore, neither the daughter nor the stepson had any specific right to the car, nor did either of them as individuals have a superior right against the other to

prohibit use of the car. The car was an asset of the estate and subject to administration. *In re Vettese's Estate*, 421 So. 2d 737, 738 (Fla. 4th DCA 1982) (holding that property improperly transferred directly to decedent's daughters must be returned to the estate for proper administration under the terms of the will and governing law); *see also* § 731.201(14), Fla. Stat. (2013) (defining "estate" as "the property of a decedent that is subject to administration"); *Blechman v. Estate of Blechman*, 160 So. 3d 152, 157 (Fla. 4th DCA 2015) ("If the subject property will pass either intestate or by way of a will, then it is part of the decedent's probate estate."). Ultimate ownership of the car would not be determined until after resolution of claims, taxes, debts, expenses of administration, and other obligations of the estate, if any. It might have ended up being sold to pay the estate's obligations, no longer belonging to the estate or any beneficiary.

## Control of the Car

Clearly, Decedent's daughter had actual physical control of Decedent's car. Both the car and its keys were kept at her house, where her late father and stepmother had lived with her. She claimed that Decedent had allowed her to use his car on occasion and that she believed she had the right to use the car after his death. These facts are undisputed. She did not claim or prove, however, that her father had ever given her permission to use the car in the event of his death. He did not give her the car in his will, which made no bequest of the car, naming his

6

daughter and stepson as co-equal beneficiaries under the residuary clause. At the time of the accident, therefore, the daughter had no ownership interest in the car or express permission for post-death use of the car. She simply got the keys and drove the car.

The stepson's legal status was different. Upon appointment by the court, the stepson in his capacity as personal representative would have the right to control the assets of the estate as authorized by Decedent's will and the law. § 733.608, Fla. Stat. ("All real and personal property of the decedent, except the protected homestead, within this state and the rents, income, issues, and profits from it shall be assets in the hands of the personal representative . . ." for payment of expenses and obligations of the estate, for contribution, advancement, and distribution.). The personal representative's duties and powers commence upon appointment. § 733.601, Fla. Stat. Under the Probate Code, acts performed by the person appointed, "occurring before appointment *and beneficial to the estate*," have the same effect as acts taken after appointment. *Id.* (emphasis added).

This authority, however, does not impose on the nominated personal representative any statutory duty to act prior to appointment. *Richard v. Richard*, 193 So. 3d 964, 968-69 (Fla. 3d DCA 2016) (affirming that relation-back doctrine codified in section 733.601 reflected intent to avoid imposing legal duties on personal representative prior to appointment and assumption of statutory duties).

7

These authorities establish that a nominated or putative personal representative has the legal authority to act for the benefit of the estate prior to appointment, but is not statutorily required to do so.

In this case, Appellants argued that Decedent's stepson as nominated but not yet appointed personal representative had the right to control Decedent's car, and that such authority to control established both an identifiable property interest in the car and implied consent to Decedent's daughter's use of the car because he took the title to a probate lawyer shortly after Decedent died but failed to take the keys or the car itself. Based on the authorities cited above, we disagree with the trial court's reasoning on the question of the stepson's right to control the car. We nevertheless affirm the entry of summary judgment in favor of the estate.

The facts relevant to this issue are undisputed and do not demonstrate actual knowledge or consent (nor do Appellants argue actual consent). We conclude that because Decedent's stepson had no legal duty to prevent Decedent's daughter from using Decedent's car, Appellants cannot demonstrate implied consent, which is an essential element of their claim under the dangerous instrumentality doctrine. *See Dade Cty. Sch. Bd. v. Radio Station WQBA*, 731 So. 2d 638, 644-45 (Fla. 1999) (articulating the "tipsy coachman" doctrine that "if a trial court reaches the right result, but for the wrong reasons, it will be upheld if there is any basis which would support the judgment in the record").

## The Dangerous Instrumentality Doctrine

Florida's dangerous instrumentality doctrine is a creature of common law that "imposes . . . vicarious liability upon the owner of a motor vehicle who voluntarily entrusts that motor vehicle to an individual whose negligent operation causes damage to another." *Aurbach v. Gallina*, 753 So. 2d 60, 62 (Fla. 2000) (citing *S. Cotton Oil Co. v. Anderson*, 86 So. 629, 638 (Fla. 1920) (On Petition for Rehearing)). An owner voluntarily entrusts a vehicle to another when it gives that person authority to operate the vehicle by "either express or implied consent." *Id.* (citing *Hertz Corp. v. Jackson*, 617 So. 2d 1051, 1053 (Fla. 1993)).

The undisputed facts here do not demonstrate express consent, and Appellants do not argue otherwise. Rather, they rely entirely on implied consent. Most vehicle cases involving implied consent examine factors such as what a car owner knows about the driver's prior use of the vehicle, the location and accessibility of the keys, the nature of any familial relationship between owner and driver, and the conduct of the parties after an accident occurs. *Ming v. Intramerican Car Rental, Inc.*, 913 So. 2d 650, 656 (Fla. 5th DCA 2005). The factors set forth in *Ming*, however, do not establish implied consent in this case. It is undisputed that Decedent's stepson did not even know Decedent's daughter had ever had permission to drive the car, did not think that Decedent would have allowed her to use the car, and did not know that she had ever driven the car. The

9

relationship between Decedent's daughter and his stepson, and their locations with one living in Florida and the other in South Carolina, in no way establish consent. After the accident, the only evidence of interaction between the two of them was Decedent's daughter's phone call to her stepbrother to inform him of the accident, again demonstrating no knowledge or control by the stepson. The undisputed facts of this case fail to establish the element of consent necessary to maintaining a cause of action under Florida's dangerous instrumentality doctrine. *See, e.g., Dooley v. Harris*, 714 So. 2d 1206 (Fla. 5th DCA 1998) (affirming summary judgment upon finding no evidence of implied consent in undisputed facts).

Rather than use the *Ming* factors to establish implied consent, Appellants rely on Decedent's stepson's failure to act despite having authority to act—with his knowledge of authority to act demonstrated by his taking the car title to a probate lawyer. We reject this argument as a matter of law. To say that implied consent arises from a nominated personal representative's failure to act when authority to act exists is to create a duty to act prior to appointment, directly contrary to the Probate Code's distinction between authority and duty. § 733.601, Fla. Stat.; *Richard*, 193 So. 3d at 968-69. Appellants' argument could subject nominated personal representatives to liability from which the Legislature intended to shield them in the period after a death and before issuance of letters of administration formally appointing them as personal representatives. The law does not impose

10

such a duty on facts such as those presented here. Accordingly, we affirm the trial court's entry of summary judgment in favor of the estate.

AFFIRMED.

LEWIS and ROWE, JJ., CONCUR.